# United States District Court, Northern District of Illinois

5S-6

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4099 | **DATE** | 1/3/2002 |
| **CASE TITLE** | REG G. GARRATT vs. SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN OF KNOWLES ELECTRONICS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [20-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

/s/ Suzanne B. Conlon

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 07 2002 date docketed | 30 |
| | Docketing to mail notices. | | /s/ docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 1/3/2002 date mailed notice | |
| SB | courtroom deputy's initials | | CB mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JAN 0 7 2002

| | |
|---|---|
| REG G. GARRATT | ) |
| Plaintiff, | ) No. 01 C 4099 |
| v. | ) Suzanne B. Conlon, Judge |
| SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN OF KNOWLES ELECTRONICS, INC. | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Reg G. Garratt sues the Supplemental Executive Retirement Plan of Knowles Electronics, Inc. ("the SERP") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The SERP moves for summary judgment.

### BACKGROUND

All facts are undisputed unless otherwise noted. Reg Garratt is the former Chief Executive Officer and Chairman of the Board of Knowles Electronics, Inc. ("Knowles"). Garratt entered into a revised employment agreement with Knowles on June 21, 1993. The agreement provided Garratt a special incentive payment ("success bonus") of $500,000 for his cooperation and assistance in the sale of Knowles. The success bonus was increased on March 15, 1998 to 0.33% of the sale price. On February 23, 1999, Garratt's success bonus was increased to 0.42%. Section 3.04 of Garratt's employment agreement governed the payment of the success bonus:

> In the event the Company or its stockholders enter into a definitive agreement ("the definitive agreement") providing for the sale or other complete disposition of the Company . . . the special incentive payment provided above shall be paid to

1

Executive on the day immediately preceding the date of closing, provided that on or before that day Executive has not been notified, orally or in writing, by the Company that the buyer under the definitive agreement is refusing to close the transaction or that the definitive agreement has been or is being terminated and the closing will not occur.

On March 16, 1998, Knowles' board of directors approved retirement benefits in excess of Internal Revenue Code limitations for Knowles pension plan participants. SERP § 3.1 provided that plan benefits were equal to the benefit the participant "would have been entitled to receive under the [pension plan] . . . without giving effect" to any provisions in the Internal Revenue Code, less the "benefit actually payable" to the pension plan. Def. 56.1 Facts at ¶ 27. SERP benefits are "computed as of the date of termination of employment of the Participant." Def. 56.1 Facts at ¶ 22.

On June 23, 1999, Knowles entered into a recapitalization agreement with Doughty Hanson & Co. ("Doughty Hanson") for the purchase of Knowles. The closing was scheduled for June 30, 1999. The recapitalization agreement set forth numerous pre-conditions to the closing, including Knowles' receipt of $350 million in financing on terms acceptable to the buyer. Obtaining this financing required completion of the negotiation, execution and implementation of borrowing documentation among Knowles, the buyer, and lending institutions. The financing was not completed until June 30, 1999. In addition, an amendment to the recapitalization agreement was executed on June 29, 1999 that expanded the indemnity provision covering claims for plan benefits.

On June 25, 1999, the board was informed Garratt's projected SERP benefits was greater than anticipated because his success bonus was included in plan benefits calculation. Several days before, Bernie Smith, the Chief Financial Officer of Knowles, contacted Mercer, Inc. to request final pay-out figures for Knowles executives. Smith learned that Garratt's April 1999 estimated plan benefits of $1.4 million was understated. When the success bonus was considered, the plan benefits

increased to $3.2 million. Smith informed Garratt and John W. Hump, Knowles' attorney. At the board meeting on June 25, 1999, Hump advised the board to exclude success bonuses from benefit calculations. The board amended § 3.1 to expressly exclude success bonuses. Section 6.1 authorizes the board to amend the plan:

> 6.1 Amendment or Termination. The Company intends the Plan to be permanent but reserves the right to amend or terminate the Plan when, in the sole opinion of the Company, such amendment or termination is advisable. Any such amendment or termination shall be made pursuant to a resolution of the Board and shall be effective as of the date of such resolution.

However, § 6.2 limits that authority:

> 6.2 Effect of Amendment or Termination. No amendment or termination of the Plan shall directly or indirectly deprive any current or former Participant or Surviving Spouse of all or any portion of any Supplemental Retirement Benefit . . . payment of which has commenced prior to the effective date of such amendment or termination or which would be payable if the Participant terminated employment for any reason including death, on such effective date.

On June 30, 1999, the sale of Knowles was completed. The previous day Knowles paid Garratt over $7 million, including $1.349 million in SERP benefits and a success bonus of $ 2.226 million.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Res. Comm.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the

3

record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Bay v. Cassens Transp., Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## II. Breach of the SERP

The SERP is a top hat plan subject to ERISA's enforcement provisions.[1] *Garratt v. Knowles*, 245 F.3d 841 (7th Cir. 2001). Top hat plans represent a special category of ERISA benefit plans that provide compensation arrangements to a select group of management-level employees. *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1); *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 604 (7th Cir. 1999). Top hat plans are exempt from ERISA's substantive provisions, including vesting, funding, and fiduciary requirements; but they are subject to ERISA's enforcement provisions. *In re New Valley Corp.*, 89 F.3d 143, 148-49 (3d Cir. 1996); *Kemmerer v. ICI Americas, Inc.*, 70 F.3d 281, 286-87 (3d Cir. 1995). Federal common law developed under ERISA governs the enforcement of top hat plans. *Koenig v. Waste Mgmt, Inc.*, 76 F.Supp.2d 908, 913 (N.D. Ill. 1999); *Fasco Indus., Inc. v. Mack*, 843 F. Supp. 1252, 1255 (N.D. Ill. 1994). In interpreting a contract, the court must determine the intent of the parties. *Collins v. Ralston Purina Co.*, 147 F.3d 592, 598 (7th Cir. 1998). Where there are no genuine issues of material fact, contract interpretation is particularly well-suited for summary judgment. *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993).

---

[1] In Garratt's prior action (case no. 00 C 0764) against the board of directors and Knowles, the Seventh Circuit held the SERP was a top-hat plan under ERISA, the court had subject matter jurisdiction, and Garratt was required to sue the plan, not the board of directors and Knowles. *Garratt*, 245 F.2d at 947-49. The Court affirmed dismissal of Garratt's complaint.

4

The crux of this dispute concerns the validity of Knowles' amendment to SERP § 3.1 to exclude Garratt's success bonus from calculation of plan benefits. The parties agree Garratt would have received $3.2 million in benefits without the amendment to SERP § 3.1(a). After the board's June 25, 1999 amendment, Garratt was paid $1.4 million in plan benefits.

Garratt contends the June 25, 1999 amendment is invalid because it violates the provisions of SERP § 6.2. It is undisputed § 6.1 authorizes the board to amend or terminate the plan. Def. 56.1 Facts at ¶ 23. Section 6.2 precludes plan amendments that would deprive Garratt of benefits "which would be payable if [Garratt] terminated employment for any reason including death, on such effective date" of the amendment. *Id.* at ¶ 24. Garratt grounds his argument in § 3.04 of his employment agreement, which states Garratt will receive a success bonus in the event of a definitive agreement for the sale of the company. Pl. 56.1 Facts at ¶ 1. Garratt's SERP benefits are linked to his success bonus: § 3.04 of Garratt's employment agreement provides for a success bonus; the success bonus is incorporated into Garratt's compensation under § 1.09 of his pension plan; compensation is included in Garratt's earnings under § 1.16 of the pension plan; and Garratt's earnings are used to calculate benefits under SERP § 3.1. Def. 56.1 Facts at ¶ 28. Garratt claims he was entitled to the success bonus on June 23, 1999, when the recapitalization agreement was signed. As a result, Garratt asserts if he were terminated on June 25, 1999, he would be entitled to a SERP benefit that took into account his success bonus.

Garratt's contentions are without merit. In plain language, § 3.04 of Garratt's employment agreement instructs that his success bonus was to be paid on the day prior to closing, June 29, 1999; *Bellino v. Schlumbereger Tech., Inc.*, 944 F.2d 26, 29-30 (1st Cir. 1991) (plain language in ERISA plan is conclusive of intent of the parties). SERP § 3.1 states benefits are "computed as of the date

of termination of employment." Def. 56.1 Facts at ¶ 22. Moreover, the pre-amended version of § 3.1 states plan benefits were payable commencing on Garratt's retirement date. *Id.*, Ex. A-3. Under SERP § 6.2, the board could not amend the plan to deprive Garratt of benefits payable on June 25, 1999. Because his success bonus was not payable until June 29, 2001, it would be excluded from plan benefits calculation on June 25, 1999. *Trombetta v. Cragin Federal Bank*, 102 F.3d 1435, 1438 (7th Cir. 1996) (contract terms are interpreted in an ordinary sense with respect to a plan participant of ordinary intelligence and experience). Indeed, it is undisputed Garratt was paid the full and accurate amount of his success bonus on June 29, 1999. Def 56.1 Facts at ¶ 16.

Nevertheless, Garratt contends the June 23, 1999 recapitalization agreement effectively sold the company, vesting his right to the success bonus on June 25, 1999. In *Haran v. Dow & Jones Co., Inc.*, No. 99 C 0225, 1999 WL 673303, at *1 (S.D.N.Y. Sept. 3, 1999), *aff'd* 216 F.3d 1072 (2d Cir. 2000), the court rejected the argument that plaintiff had vested rights to severance pay when the contract to sell the subsidiary was signed. The court determined "[a]s with all such contracts, the contract for the sale of the subsidiary was contingent on the fulfillment of certain conditions." *Id.* Consequently, the court held the board's amendment to eliminate severance pay before closing was valid. *Id.*

*Harlan* is factually analogous. The Knowles sale was not completed until June 30, 1999. The recapitalization agreement was amended on June 29, 1999 to broaden Knowles' indemnity obligations for claims under the SERP. Financing of the transaction, including the negotiation, execution and implementation of borrowing documentation among Knowles, the buyer, and lending institutions, was not completed until June 30, 1999. Def 56.1 Facts at ¶¶ 10-13. Section 10 of the recapitalization agreement details numerous conditions that must be fulfilled before closing. *Id.*, Ex.

6

A-9. Garratt's unsupported assertion that the closing was a mere "formality" is unpersuasive. Pl. Resp. Br. at 3. Indeed, Garratt concedes the financing agreements had to be signed before the sale could be consummated. Pl. Resp. Br. at 11. Garratt offers no evidence to demonstrate the closing on June 30, 1999 was irrelevant or immaterial to completion of the sale. Instead, Garratt advances § 7.1 of the recapitalization agreement, which requires Knowles to use reasonable efforts to obtain financing consistent with existing commitment letters, and § 13.15 which names specific lenders for the transaction. Garratt contends those sections demonstrate the sale was completed. In the face of numerous pre-conditions to closing under § 10, Garratt's assertions fail to create a genuine issue for trial.

In *Threadgill v. Prudential Securities Group*, 145 F.3d 286 (5th Cir. 1998), the court held the signing of a change in control agreement did not constitute a "winding up" of the corporation. The board amended the executive plan to eliminate a plan benefit prior to closing. The court held plaintiff's rights to plan benefits did not vest until closing. Significantly, the benefit plan precluded amendments depriving a participant "entitled to benefits as a result of occurrence of Change in Control." *Threadgill*, 145 F.3d at 289. Because the board had eliminated the benefit before closing, plaintiff was not entitled to plan benefits.

*Threadgill* is instructive. Section 6.2 of the plan precluded an amendment that deprived Garratt of benefits payable on June 25, 1999. Def. 56.1 Facts at ¶ 23. Garratt's success bonus was to be paid on the day before closing. *See e.g. Olander*, 187 F.3d at 608 (term "received by employee" meant compensation actually received and not earned). However, under Garratt's analysis, his success bonus would be payable on June 23, 1999 regardless of the closing of the Knowles sale. The plain language of § 3.04 of Garratt's employment agreement precludes payment of the success bonus

7

if the sale is not completed. Pl. 56.1 Facts at ¶ 1. At his deposition, Garratt conceded he would not receive a success bonus if the closing had failed on June 30, 1999. Def. 56.1 Facts, Ex. B at 32. The purpose of the success bonus bolsters that conclusion: the bonus was incorporated in Garratt's plan to reward him for a *successful* sale of the company. Def. 56.1 Facts at ¶ 5; *Alexander v. Primerica*, 967 F.2d 90, 93 (3d Cir. 1992) (ERISA plan provisions should be considered in context of the whole plan). *Threadgill* instructs that a change in control "must actually take place – not merely be contemplated in the future – for the benefits to vest." *Id.* at 294. Thus, Garratt was not entitled to a success bonus on June 23, 1999. Moreover, even if Garratt was entitled to a success bonus on June 23, 1999, § 6.2 prevents amendments that would deprive Garratt of benefits *payable* as of June 25, 1999. Def. 56.1 Facts at ¶ 24. In his response brief, Garratt concedes his success bonus was not payable until June 29, 1999. Pl. Resp. Br. at 8. Indeed, Garratt's earnings, used to calculate plan benefits, include compensation *paid* to a plan participant. Def. 56.1 Facts at ¶ 28. Thus, the success bonus would not factor into plan benefits calculation until June 29, 2001.

Garratt relies on *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281 (3d Cir. 1995), for the proposition that the SERP is a unilateral contract that cannot be revoked after performance is completed. But *Kemmerer* involved plan participants with fully vested rights. In *Kemmerer*, the plan participants had retired and were receiving retirement benefits for several years before the plan was terminated. *Kemmerer*, 70 F.3d at 285. The court determined a plan amendment was invalid after plan participants accepted the plan by full performance. *Id.* at 287-89.

Garratt misapplies the unilateral contract doctrine. The unilateral contract at issue is the SERP, not his employment agreement. Garratt must complete performance and accept the plan's terms upon retirement or termination. *See Pratt v. Petroleum Prod. Mgmt, Inc.*, 920 F.2d 651, 661

(10th Cir. 1990) (plan could not be amended when participant had fully vested rights; plaintiff's termination vested rights to employer contribution account); *Koenig v. Waste Mgmt, Inc.*, 76 F.Supp.2d 908, 913-14 (N.D. Ill. 1999) (same). Thus, even if Garratt had completed performance entitling him to a success bonus on June 25, 1999, he had not completed performance on his benefit plan to preclude amendment of the SERP under the unilateral contract doctrine. In sum, the plain language of § 6.1 expressly authorizes the board to amend the SERP. Section 6.2 protects Garratt's benefits to the extent they are payable on the date of the amendment. Garratt's success bonus was payable on June 29, 1999. Thus, the board did not violate § 6.2 by excluding success bonus from plan benefits calculations. Garratt fails to create a genuine issue for trial.

## CONCLUSION

The motion for summary judgment is granted.

January 3, 2002

ENTER:

Suzanne B. Conlon
United States District Judge